IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Valerie J. Jones, )
)
      Plaintiff, )
) No. 02 C 4874
v. )
) Judge William J. Hibbler
MICHAEL O. LEAVITT, Administrator )
United States Environmental )
Protection Agency )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

The United States Environmental Protection Agency ("EPA"), seeks summary judgment on Valerie Jones' complaint for damages and injunctive relief. Jones' suit alleges that the EPA: (1) retaliated against her in violation of Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-16 ("Title VII"); (2) discriminated against her on the basis of her race, African American, in violation of Title VII; and (3) discriminated against her on the basis of disability and failed to accommodate, in violation of the Rehabilitation Act, 29 U.S.C. § 791. This matter is fully briefed, the EPA having chosen not to file a reply in this matter.[1]

I.    Facts

Jones was hired by the EPA as an Environmental Scientist in the EPA's Region 4 Water Division in July 1983, and she served as the EPA's Region 5 Pretreatment Coordinator. In 1985, she was promoted to a supervisory position in the Water Division as Chief of the Underground Injection Control Permit Unit, and in 1989, she was promoted to a managerial position as Chief of

---

[1] Jones filed a motion for ruling on Defendant's motion for summary judgment on March 15, 2005. This motion is DENIED as moot.

the Monitoring and Quality Assurance Branch in the Environmental Sciences Division.

On October 25, 1994, Jones filed a Title VII lawsuit against the EPA, alleging, among other things, that she was removed from management and disciplined in retaliation for complaining of race and sex discrimination to her superior. In December 1996, a jury found for Jones on the retaliation count, and the court ordered that Jones be reinstated to the next available Branch Chief position. From February 1998 through June 1998, the EPA assigned Jones to the Water Division as Chief of the Analytic Research and Technology Service Branch. After admonishment by the court, in February 1999, Jones was assigned to a senior level management position as Chief of the Underground Injection Control Branch 5. Jones was the highest ranking black female employee in EPA Region 5, and the only black supervisor and manager in EPA Region 5 Water Division. Jones' immediate supervisor was Jo Lynn Traub, Director of Region 5's Water Division.

In August 2000, Dr. Marsha Adebayo contacted Jones for advice on a Title VII lawsuit Adebayo had filed against the EPA. Subsequently, Jones was contacted about a congressional subcommittee hearing on discriminatory practices at the EPA, and draft wording for the Notification and Federal Employee Anti-Discrimination and Retaliation Bill. Jones told Traub about these contacts.

Also in 2000, EPA Region 5 undertook an audit of all government travel credit card transactions in the region. The EPA's written policy, in place since 1985, provides that the travel card may be used solely for expenses incurred for official, authorized government travel. An employee may only make ATM cash advances limited to the amount on the signed travel authorization form, and made no earlier than three days prior to travel and no later than the last day of travel. EPA Region 5 uses a Government Credit Card Misuse Penalty Matrix which categorizes

travel card misuse according to the dollar amount of misuse, and establishes a presumptive penalty range for each level of misuse.

In August 2000, the EPA notified Jones that she had used her government card to withdraw cash from ATM machines without authority on 41 occasions during fiscal year 2000. On November 6, 2000, Jones provided her supervisor with tables that she had prepared to identify and explain her official travel destinations, expenses, transactions, and payments from February 1999 through June 2000. Nevertheless, on November 15, 2000, EPA Management Analyst, Roger Coppeck, recommended that Traub take administrative action against Jones for misusing her government travel card in the amount of $9,433.00. Many of Jones' ATM cash advances could not be linked to authorized trips by either timing or amount, and her ATM cash advances did not match her authorized ATM cash advances. Coppeck determined that Jones: (1) obtained 41 ATM cash advances but only 18 had been authorized; (2) withdrew $9,940.41 in ATM cash advances but had authority to withdraw only $2,559.29; and (3) incurred $16,520.40 in government travel expenses but was only authorized to incur $7,087.40 in expenses.

On June 20, 2001, Coppeck analyzed additional government travel card activity by Jones from June 2000 through May 2001, and he determined that Jones had incurred an additional $2,559.74 in unauthorized travel expenses, bringing the total to $11,992.74. Once again, Jones' ATM cash advances could not be linked to an authorized trip by either timing or amount, and her ATM cash advances did not match her authorized ATM cash advances. Coppeck again recommended administrative action against Jones for misuse of her government travel card.

The next month, Jones provided Traub with new tables to identify and explain her official travel destinations, expenses, transactions, and payments from June 2000 through March 2001.

However, on July 26, 2001, Traub issued Jones a Notice of Proposed Removal based on her "use of her government travel card for other than official purposes," through 44 unauthorized ATM transactions on her government travel card, totaling $11,309.57. Traub determined that Jones' explanation that her transactions were related to official government travel was not supported and lacked truthfulness.

On September 5, 2001, Jones submitted a written response to the Proposed Removal in which she claimed that she had: (1) never misused her government travel card; (2) been unaware of any policy governing use of the travel card until she received an August 25, 2000 e-mail informing her that she may have engaged in unauthorized ATM transactions; (3) taken out ATM cash advances only for business travel and to avoid making delinquent payments on her government travel credit card since the EPA deliberately delayed timely reimbursement of her travel expenses; and (4) filed an EEO complaint alleging that the proposed removal was based on discrimination and retaliation.

Nevertheless, on September 20, 2001, Jones was placed on administrative leave and directed to leave the EPA's premises. Jones was removed form her Branch Chief position and reassigned to unclassified duties on September 21, 2001. Afterwards, Jones was placed on increments of 60-day details and reported to a GS-15, non-supervisory employee, Anthony Carrollo. On October 16, 2001, Jones filed an EEO complaint against the EPA alleging race discrimination, retaliation, physical handicap discrimination based on a heart condition, and failure to make reasonable accommodation.

On January 29, 2002, Jones filed a request with Carrollo to work at home on an episodic basis because of a heart condition. Jones' heart condition stems from a heart attack in August 1993, after which she underwent angioplasty surgery. In October 1993, she underwent angiogram surgery, and in August 1996, she underwent angioplasty again. In December 2001, Jones underwent

angiogram surgery again. Carrollo never responded to her request to work at home.

Finally, on March 8, 2002, Jones received an EPA memorandum signed by David A. Ullrich, the Deputy Regional Administrator, stating that Jones was being removed from Federal service to "promote the efficiency of the Federal service and for using government property . . . for other than official purposes." The EPA alleged that Jones misused her government credit card and obtained unauthorized ATM advances in the amount of $10,390.29. The presumptive penalty for travel card misuse over $8,000 is removal.

On March 19, 2002, Jones amended her EEO complaint to allege that she was terminated for untrue reasons and as a pretext for unlawful race discrimination and retaliation in violation of Title VII. On July 10, 2002, Jones filed the instant lawsuit against the EPA alleging: (1) retaliation in violation of Title VII; (2) race discrimination in violation of Title VII; and (3) discrimination and failure to accommodate in violation of the Rehabilitation Act.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Once the moving party has met its initial burden, the opposing party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Id.* The non-moving party cannot create an issue of fact with speculation or conjecture. *Borcky v. Maytag*, 248 F.3d 691, 695 (7th Cir. 2001). During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).

## III. Rehabilitation Act Claim: Failure to Accommodate

Jones claims that she is disabled due to a heart condition. Jones had a heart attack followed by angioplasty surgery in August 1993, angiogram surgery in October 1993, angioplasty surgery in August 1996, and angiogram surgery in September 2001. On January 29, 2002, Jones requested to work at home on an episodic basis to avoid being subjected to alleged "daily reprisal and retaliation" from her supervisors. Her supervisor never responded to her request, so she was not allowed to work at home. Jones claims this constitutes discrimination and a failure to accommodate under Section 501 of the Rehabilitation Act, 29 U.S.C. Section 794.

A claim of employment discrimination under the Rehabilitation Act is reviewed under the same standards as the Americans with Disabilities Act ("ADA"). 29 U.S.C.A. § 791 (g). A plaintiff must first show she is a qualified individual with a disability. 42 U.S.C. §12112(a). The ADA defines disability in three ways: (1) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C.§12102(2); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002).

Jones claims that her heart condition constitutes a physical impairment that substantially

limits one or more major life activities. Jones, however, does not delineate which major life activities her heart condition limits. Federal regulations have named "performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working" as tasks that qualify as major life activities. 29 C.F.R. §1630(i). A person is substantially limited when she is "either unable to perform, or significantly restricted as to the condition, manner, or duration under which the individual can perform, a major life activity as compared to an average person in the general population." 29 C.F.R. § 1630.2(j). Although Jones states that she had angiogram or angioplasty surgery four times – twice in 1993 after her heart attack, in 1996, and then not again until 2001 – this does not by itself prove that she was significantly restricted in performing a major life activity. Without more, Jones has not established that she is disabled, and thus her Rehabilitation Act claim cannot survive.

## IV. Race Discrimination

Jones also claims that the EPA discriminated against her on the basis of race when it terminated her for improper credit card use. A *prima facie* case of race discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job or was meeting the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) the employer treated similarly situated employees outside of the protected class more favorably. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). Jones does not make the required showing that the EPA treated similarly situated employees outside of the protected class more favorably.

Jones presents evidence that from 1995 to 2003, there were a total of eight EPA Region 5 employees whose travel card misuse was $8,000 or more – two white employees and six African

7

American employees, including plaintiff:

- A white Accountant in the Comptroller Branch, Resource Management Division, was found to have committed travel card misuse in the amount of $36,297.83. Her punishment for this misuse was a 30-day suspension.

- A white Environmental Scientist in the Air and Radiation Division was found to have committed travel card misuse in the amount of $9,754.87. This employee's punishment for this misuse was a 60-day suspension.

- An African American Environmental Protection Specialist in the Water Division was found to have committed travel card misuse in the amount of $10,064.31. This employee received a 30-day suspension.

- An African American Grants Information Assistant in the Planning and Management Division was found to have committed travel card misuse in the amount of $11,891.39. This employee was discharged as punishment for this travel card misuse.

- An African American Grants Specialist in the Planning and Management Division was found to have committed travel card misuse in the amount of $14,319.64. This employee was discharged as punishment for this travel card misuse.

- Another African American Grants Specialist in the Planning and Management Division was found to have committed travel card misuse in the amount of $21,281.26. This employee was discharged as punishment for this travel card misuse.

- An African American Environmental Protection Assistant in the Water Division was found to have committed travel card misuse in the amount of $8,361. This employee was suspended for 45 days as punishment for this travel card misuse.

Besides Jones, three of the African American employees were terminated because of credit card misuse; the remaining two African American employees received suspensions; and the two Caucasian employees also received suspensions. These employees, however, were not similarly situated to Jones. In order to establish a *prima facie* case of discrimination, Jones must show that her "comparables" were similarly situated to those employees in all respects. *Spath v. Hayes Wheels, Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). Jones does not show that any of her

comparables, including job title, grade, performance, qualifications, experience and/or seniority, mirrored those of the employees listed. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (listing "comparables"). None of the other employees were supervisors like Jones. They did not have the title, authority, or work experience that she had when she was found to have committed credit card misuse. While Jones was a Branch Chief in the Water Division at that time, the other employees included an Accountant, an Environmental Scientist, a Grants Information Assistant, two Grants Specialists, an Environmental Protection Specialist and an Environmental Protection Assistant, several of whom were also in different divisions and branches that Jones. Therefore, Jones cannot establish a *prima facie* case of race discrimination.

## V. Retaliation

Finally, Jones claims that she was retaliated against because she engaged in the following statutorily protected activity: (1) she filed and won a previous Title VII suit against the EPA (*Jones v. Browner*, No. 94 C 6205); (2) she assisted an African American EPA employee, Dr. Marsha Coleman Adebayo, in filing a Title VII lawsuit against the EPA and in preparing for testimony before a congressional subcommittee; and (3) Jones told an EPA employee that Traub had asked Jones questions regarding his sexual orientation. To establish a *prima facie* case of retaliation, an employee must show that: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) she suffered an adverse job action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002).

Jones claims that the EPA retaliated against her by: terminating her employment; placing her

on administrative leave in September 2001; accusing her of taking Rebecca Harvey's Branch Chief position during a private meeting between Jones and Traub; denying Jones EEO counseling about the Jones-Traub meeting; Traub claiming in a branch-wide meeting that the court ordered the EPA to give Jones a Branch Chief position; imposing upon her hiring restrictions and severe travel budget cuts not imposed on other branch chiefs; and Traub seeking input only from the Safe Drinking Water Branch Chief at Water Division management meetings and not from Jones. Only Jones' allegations that she was terminated and placed on administrative leave in retaliation for her protected conduct constitute adverse job actions. "[M]ere unhappiness and inconvenience are not actionable under Title VII. At minimum, the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531-32 (7th Cir. 2003) (internal citations omitted.) Jones presents no evidence that the EPA imposed stricter hiring restrictions and budget cuts on her, and Jones' duties, responsibilities, compensation, and benefits did not change as a result of any of the other alleged acts. Therefore, these acts do not constitute adverse employment actions under Title VII and cannot constitute retaliation.

Jones' termination and placement on administrative leave, however, do constitute adverse acts. *See id.* The EPA argues that Jones was not performing her job according to the EPA's legitimate expectations because she misused her credit card. Jones admits that she broke the rules as they are written, but she claims that she was unaware of the written policy and that the EPA disciplined her more harshly than rule-breakers who were not being retaliated against. *See Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). The EPA's stated policy, effective December 30, 1998, requires the Agency Program Coordinator ("APC") to "review the monthly activity reports reflecting travelers' accounts and travel advance transactions to verify

10

appropriateness of transactions and, at a minimum, perform a monthly statistical sampling of accounts." The APC for Region 5, however, admitted that he did not do this in 1999, and that the EPA focused on delinquencies in payment, not misuse, at least prior to December 1999. Jones also maintains that she did not receive a written copy of the EPA's travel card policy until August 25, 2000, after the EPA first claimed that she misused her travel card.

While this may raise an issue of fact as to whether the EPA consistently applied and enforced the travel card policy, it is not enough to raise an issue of fact as to whether the EPA applied the policy to Jones in retaliation for Jones' protected speech. Jones' evidence shows that out of the eight employees disciplined for credit card misuse, three other employees were also terminated, even though they did not engage in statutorily protected conduct. Therefore, Jones cannot show that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity, and she cannot establish a *prima facie* case of retaliation.

## VI. Conclusion

Due to the foregoing analysis, the EPA's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

3/18/05
Dated

The Honorable William J. Hibbler